**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



_Mary Ann Whipple_
United States Bankruptcy Judge

**Dated: August 19 2013**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-33744 |
| | ) | |
| Daniel B. Grant, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 12-3205 |
| | ) | |
| Construction Data Solutions, LLC, et. al., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Daniel B. Grant, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER DENYING MOTION TO CHANGE VENUE**

This case came before the court for hearing on Plaintiff's Motion to Change Venue [Doc. # 16] and Defendant's response [Doc. # 18]. The parties had the opportunity to, and did, present testimony and other evidence in support of their respective positions. Having considered all of the evidence and the arguments of counsel, for the reasons that follow, the court will deny Plaintiff's motion.

**BACKGROUND**

Defendant is the debtor in the underlying Chapter 7 case commenced on August 15, 2012. [Case No. 12-33744]. Defendant's bankruptcy Schedule B includes "[f]unds owed by [Plaintiff] Data-Maxx Technologies" in the amount of $100,000.00.[1] [*Id.,* Doc. # 1, p. 10/56]. Defendant states on Schedule B that such funds are "[s]ecured by Company Assets," presumably referring to assets of Data-Maxx Technologies, Inc. ("Data-Maxx"). [*Id.*]. Defendant's Schedule F shows Plaintiffs Marjorie Brantley ("Brantley"), Construction Data Solutions and Data-Maxx as creditors holding unsecured claims for a business debt in an unknown amount. [*Id.* at 17-18/56]. The only estate asset of value identified by the Chapter 7 Trustee in the underlying bankruptcy case is the debt allegedly owed to Defendant by Data-Maxx. [*See id.*, Doc. # 14; *see* Def. Ex 6].

Plaintiffs commenced this adversary proceeding by filing a timely Complaint to Determine Dischargeability on November 29, 2012. Plaintiffs' complaint includes four counts alleging state law claims: Count I, labeled "Defamation/Libel/Slander/Invasion of Privacy," Count II, "Tortious Interference with Business Relationship," Count III, "Intentional Infliction of Emotional Distress," Count IV, "Conversion of Property," and Count V, a nondischargeability claim. In Count V, Plaintiffs claim that the debts for damages allegedly owed by Defendant to Plaintiffs as a result of the acts that form the bases of their state law claims are nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6).

At the hearing, the parties presented the following facts. Brantley, who lives in Florida, and Defendant, who lived in Ohio at the time, developed a personal relationship and, eventually, a business relationship. Brantley is the sole shareholder of Data-Maxx Technologies, a Florida corporation that develops and supports software for the construction industry. Defendant owned a flooring company in Ohio and had contacts in the construction industry in Ohio. He expressed an interest not only in using Data-Maxx software in his company but also acting as a sales representative for Data-Maxx.

Defendant eventually moved to Florida in August 2008. Thereafter, both a personal and business relationship with Brantley developed. In 2008, Defendant formed Construction Data Solutions, LLC ("Construction Data"), a Florida LLC, for the purpose of acting as agent of Data-Maxx and receiving sales

---

[1] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

commissions. He was the sole member of Construction Data until July 1, 2009, when he assigned his entire membership interest to Brantley.

The business dealings of Brantley and Defendant are in dispute. Although there is no dispute that Defendant loaned money to Data-Maxx, the parties disagree as to the amount loaned. They also disagree as to the purpose and validity of various documents relating to their business relationship. Brantley testified that when Defendant became aware of a judgment entered against Data-Maxx in the state of Oregon as a result of "a problem with a licensing agreement," he suggested creating a security interest in Data-Maxx's assets in order to protect them from being depleted on execution of any judgment.

Brantley admits that she executed a Security Agreement as president of Data-Maxx on December 2, 2008, granting Defendant a security interest in all of the assets of Data-Maxx. [Def. Ex. 3]. The Security Agreement provides that "[a]ll documents executed pursuant to the transactions contemplated herein shall be deemed to be contracts made under, and for all purposes shall be construed in accordance with, the internal laws and judicial decisions of the State of Ohio." [*Id.* at ¶ 18]. It states that its purpose is to secure all liabilities owed to Defendant by Data-Maxx, and specifically identifies loans evidenced by a Promissory Note dated December 2, 2008, in the amount of $20,000 and "Promissory Notes dated September 1, 2008, and December 1, 2008," in the amounts of $20,000 and $60,000, respectively. [*Id.* at 1].

Two Promissory Notes dated October 1, 2008, and December 1, 2008, in the amounts of $60,000 and $20,000, respectively, and purportedly signed by Plaintiff as President of Data-Maxx were admitted into evidence at the hearing. As the terms of payment, both Notes provide simply that Data-Maxx promised to pay Defendant "not later than fifteen (15) days following demand therefor, in one payment, the principal sum set forth, plus interest on the unpaid principal balance from date hereof at the rate of eight percent (8.00%) per annum, until paid." [Def. Exs. 1, p. 1 and 2, p. 1]. Brantley admits signing a Promissory Note on December 1, 2008, in the amount of $20,000. According to Brantley, Defendant loaned Data-Maxx $25,000 in September 2008, and Data-Maxx had repaid $5,000 by December 1, 2008, when the note was executed and the $20,000 balance in December 2008. Thus, she testified that the December 1 note was paid in full and that she neither signed any other Promissory Note nor received any other funds from Defendant.

Brantley testified that she received a demand for payment of the $100,000 referenced in the Security Agreement and a Notice of Private Sale, both dated March 10, 2009. [Plf. Ex. B & C]. The Notice of Private Sale, signed by Defendant as the "Secured Party," states that "the secured creditor having acquired

3

all right, title and interest in and to the collateral [i.e. the assets of Data-Maxx] pursuant to . . . the Security Agreement," notice was being given of his intention to sell the collateral to Construction Data for the price of $100,000. [Plf. Ex. B]. On April 16, 2009, Plaintiff executed a Bill of Sale transferring the business assets of Data-Maxx to Construction Data in "satisfaction of any and all liability due and owing under the various promissory notes to [Defendant]. [Plf. Ex. D]. Brantley testified that Defendant later became concerned regarding creditors that could attach his assets and executed an Assignment of Membership Interest wherein he assigned his entire membership interest in Construction Data to Plaintiff. [Plf. Ex. E].

According to Brantley, Defendant's attorney in Ohio, John McHugh, prepared the documents that she signed and that she signed the documents when McHugh presented them to her in her office in Florida. She testified that Defendant's demand for payment and the Notice of Private Sale were provided, and the subsequent transfer of Data-Maxx's assets to Construction Data was completed, after a meeting with Defendant and McHugh in March 2009. Brantley testified that, at that time, she was advised by Defendant and his attorney regarding steps that should be taken in light of the possibility of Data-Maxx's exposure to other lawsuits and judgments similar to the Oregon lawsuit and judgment since it had the same licensing agreement with other customers and in light of an impending personal bankruptcy that she was facing.

In 2011, Brantley terminated both her personal and business relationship with Defendant. She testified that Defendant thereafter contacted approximately 120 business associates, customers and prospective customers. The communication relayed in those contacts, according to Brantley, form the basis of claims she has alleged in this proceeding. She has submitted a list of twenty-two individuals, all of whom live in Florida, that she states are "likely witnesses" necessary to prove her claims. She further testified that the computers and files used in the business of Data-Maxx and Construction Data are in her possession and are located in Florida, that she is the only sales person for the business such that her absence would have a significant effect on the business, and that she provides the care for her eighty-one year old mother who has "health issues" and with whom she lives.

Notwithstanding Brantley's testimony, Defendant testified that three promissory notes in the total amount of $100,000 and a security agreement were executed by Brantley, as President of Data-Maxx, for the purpose of securing assets that he was putting into the company. According to Defendant, he had put $100,000 into Data-Maxx "in one way or another" by March 2009 and that he has received no payments with respect thereto. Defendant testified that he was not aware of the Bill of Sale executed by Brantley.

4

Defendant admits sending one email to between 50 and 100 customers and creditors of Brantley's businesses to inform them of his secured position and right to their receivables. Defendant's Chapter 7 petition and Statement of Financial Affairs show that he currently resides in Ohio after leaving Florida in February 2011. [Case No. 12-33744, Doc. # 1, pp. 1 & 36/56].

## LAW AND ANALYSIS

Plaintiffs move to transfer venue of this proceeding to the United States District Court of Florida at Fort Myers. Under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." And under Federal Rule of Bankruptcy procedure 7087, the bankruptcy court "may transfer an adversary proceeding . . . to another district pursuant to 28 U.S.C. § 1412. . . ." There is, however, a strong presumption that an adversary proceeding should be conducted in the district where the underlying bankruptcy case is pending. *Bavelis v. Doukas (In re Bavelis)*, 453 B.R. 832, 873 (Bankr. S.D. Ohio 2011) (citing cases). The decision to transfer a case to another venue is discretionary and should be undertaken with caution. *Id.* at 874. The burden is on the movant to establish that the transfer is warranted by a preponderance of the evidence. *Id.* For the reasons that follow, the court concludes that Plaintiffs have not satisfied their burden.

### A. Transfer of Venue in the Interest of Justice

Courts consider the following factors in determining whether a transfer of venue will serve the interests of justice:

1) whether transfer would promote the economic and efficient administration of the bankruptcy estate;

2) whether the interests of judicial economy would be served by the transfer;

3) whether the parties would be able to receive a fair trial in each of the possible venues;

4) whether either forum has an interest in having the controversy decided within its borders;

5) whether the enforceability of any judgment would be affected by the transfer; and

6) whether the plaintiff's original choice of forum should be disturbed

*Id.* "The most significant consideration is whether the transfer would 'promote the economic and efficient administration of the estate.'" *Long John Silver's Inc. v. Nickleson*, No. 3:11-CV-93-H, 2013 WL 98041, *2, 2013 U.S. Dist. LEXIS 2010, *6 (W.D. Ky. Jan. 7, 2013) (quoting *Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir. 1979)); *Gunner v.*

5

*Anthony (In re Heritage Fin. Network, Inc.)*, 286 B.R. 318, 320 (Bankr. S.D. Ohio 2002)("As for the interests of justice, nearly every case that has considered transfer of a bankruptcy proceeding has construed this phrase in section 1412 to give primacy to administrative matters affecting the estate."(internal quotation marks omitted)).

In this case, the first factor weighs against the transfer of venue. Brantley testified that Defendant's communication with customers and other business associates form the basis of Plaintiffs' claims of defamation/libel/slander, tortious interference with business relationships and intentional infliction of emotional distress in this proceeding. As alleged in Plaintiffs' complaint, such communication included statements that Defendant was a secured creditor of Plaintiffs, that Plaintiffs were insolvent, that Plaintiffs engaged in improper accounting and tax treatments, and statements declaring that a debt was due and demanding that assets of Data-Maxx be turned over to him. [Doc. # 1, Complaint, ¶¶ 27-28]. Defendant defends, asserting not only that the statements made by him were true but that he was exercising his legal rights under the Security Agreement, in which there is an Ohio choice of law provision. [*See* Doc. # 4, ¶¶ 27-28]. The court finds the factual underpinnings of Plaintiffs' claims and Defendants defenses are so intertwined with a determination regarding the pursuit and validity of the only asset of potential value to the bankruptcy estate – the scheduled debts allegedly owed by Data-Maxx to Defendant– that transfer of this case to the middle district of Florida would negatively impact the economic and efficient administration of Defendant's Chapter 7 case, which remains open. The Trustee's ability to monitor meaningfully the trial proceedings so as to value the asset and determine whether to commence a collection action against Data-Maxx or abandon the claim would be extremely limited if trial occurs in Florida.

The court finds the remaining factors to be neutral. The court is not persuaded otherwise by Plaintiffs' argument regarding the fourth factor. According to Plaintiffs, because Defendant resided in Florida when the alleged bad acts occurred, Florida law will control their state law claims. And according to Plaintiffs, determination of their dischargeability claim requires that the court first determine their state law claims. Plaintiffs' argument, however, is flawed in that their dischargeability claims are determined under federal law, not state law. *See Grogan v. Garner*, 498 U.S. 279, 289 (1991) ("nondischargeability [is] a question of federal law independent of the issue of the validity of the underlying claim"); *South Atlanta Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006) ( "What constitutes 'willful and malicious injury' under § 523(a)(6) is a matter of federal law."); *Payne v.*

*Brace (In re Brace)*, 131 B.R. 612, 614 (Bankr. W.D. Mich. 1991) ("determining the dischargeability of a debt under § 523(a)(2)(A) is purely a matter of federal law"). While the acts alleged as the basis for Plaintiffs' state law claims are the same acts that form the basis for their nondischargeability claims, the state law claims are only relevant to the extent that Data-Maxx does, in fact, owe Defendant the debt included in his bankruptcy schedules. Only then will any funds be available for distribution to Defendant's creditors, regardless of the dischargeability of the debt owed. Plaintiffs, however, assert that no funds are owed to Defendant. In any event, this factor does not outweigh the negative impact that transfer of venue would have on the economic and efficient administration of Defendant's open Chapter 7 case.

### B. Transfer of Venue for the Convenience of the Parties

In determining whether venue should be transferred for the convenience of the parties, courts have considered the following: "(1) location of the plaintiff and defendant, (2) ease of access to the necessary proof, (3) convenience of the witnesses and the parties and their relative physical and financial condition, (4) availability of the subpoena power for unwilling witnesses and (5) expense of obtaining unwilling witnesses." *Bavelis*, 453 B.R. at 874.

The first factor is neutral as Plaintiffs reside or are located in Florida and Defendant resides in Ohio. Although Plaintiffs argue that all physical evidence is located in Florida, the only physical evidence identified is business records. Brantley testified that she has possession in Florida of the computer and other papers containing the business records. The court finds this factor has little or no weight since such evidence can be easily brought to Ohio for trial, the transport of which presumably would not require transporting the computer used in the businesses.

In support of their Motion, Plaintiffs rely primarily on the second and third factors. The court finds the parties' relative physical and financial conditions to be neutral. Both Brantley and Defendant are or have been debtors in bankruptcy. There is no evidence that Defendant is financially better situated to travel for trial and discovery than Brantley and no evidence regarding the current financial condition of the business entities.

Nevertheless, Plaintiffs assert that their claims arise as a result of the email communication by Defendant to Plaintiffs' customers and business associates. Plaintiffs have submitted a list of twenty-two persons, presumably recipients of that email, as "likely" witnesses, all of whom reside in Florida. Plaintiffs do not, however, indicate what these potential witnesses would testify regarding, other than perhaps having

7

received the email that Defendant himself acknowledges sending. Plaintiffs have not, therefore, met their burden of demonstrating the necessity of testimony from these twenty-two individuals.

For his part, Defendant indicates that he would call attorney McHugh as a witness on his behalf. Presumably, McHugh's testimony would address the validity of the Security Agreement and debts allegedly owed to Defendant by Plaintiffs. Such testimony is likely necessary to prove Defendant's defenses, specifically, that the statements made by him in the email were truthful and that he was simply exercising his rights as a secured creditor under the Security Agreement.

Both parties witnesses would be inconvenienced to the extent that they would have to travel out of state to testify. And simply listing numerous individuals as potential witnesses without identifying the necessity of their testimony is an insufficient basis for finding that venue should be transferred. The court thus finds this factor does not weigh in favor of granting Plaintiffs' motion.

The fourth factor is neutral in that the subpoena power of this court does not extend to Florida residents and, likewise, the subpoena power of the Florida bankruptcy court does not extend to Ohio residents. *See* Fed. R. Civ. P. 45(b)(2); Fed. R. Bankr. P. 9016. As to the fifth factor, to the extent that testimony of witnesses residing in Florida is necessary, and assuming such witnesses would not be willing to travel to Ohio, such testimony can be obtained by depositions upon oral examination or by written questions and used for any purpose in this court. *See* Fed. R. Civ. P. 30, 31, & 32(a)(4)(B); Fed. R. Bankr. P. 7030, 7031, & 7032. The same is true for obtaining testimony of Ohio witnesses for use in the Florida bankruptcy court. In either case, the opposing party would incur the cost of their attorney attending the deposition, either in person or telephonically.

Finally, the court has considered the fact that Brantley cares for her eighty-one year old mother in Florida. However, there is no evidence indicating that the provision of such care is unavailable by anyone else or that arranging for such care would cause an unreasonable burden on Brantley. The court anticipates the issues in this proceeding requiring a relatively short trial on the merits.

For all of the foregoing reasons, the court concludes that Plaintiffs have not met their burden of showing that transfer of venue in this case is warranted, and the court declines to exercise its discretion to do so.

**THEREFORE,** good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion to Change Venue [Doc. # 16] be, and hereby is, **DENIED.**

###